### IN THE UNITED STATES DISTRICT COURT FOR
### THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **United States of America** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.  1:24-CR-76-SAG** |
| | : | |
| **Dwone Bryant** | : | |
| | : | |
| **Defendant** | : | |

## Motion to Suppress and Request For a *Franks* Hearing

### Introduction

Following Dwone Bryant's arrest, Detective Dabo prepared an affidavit[1] in support of an application to search Mr. Bryant's cellphone. In that affidavit, Detective Dabo swore that he saw a text message on Mr. Bryant's cellphone that read "I need to buy a baby 9 for $500" (quotation marks used by Detective Dabo). A "baby 9," according to Detective Dabo, is a street term for a 9mm handgun – the same type of firearm found in Mr. Bryant's possession. The language and implication of that text message, together with the circumstances surrounding Mr. Bryant's arrest, provided a magistrate judge with probable cause to believe evidence of a crime may be found within Mr. Bryant's cellphone.

The problem with Detective Dabo's search warrant affidavit is that it is based on a false statement. There is no text message that reads "I need to buy a baby 9 for

---

[1] The discovery produced thus far includes only the search warrant affidavit that is drafted and signed by Detective Dabo. It does not include the final search warrant that was issued by the magistrate judge. Given that the discovery includes the Cellebrite extraction report, it appears that the request for the search warrant was granted. Counsel for Mr. Bryant has requested this discovery and anticipates it will be disclosed soon.

$500." There is, however, a text message that reads – an implies – something completed different: "Hell yea that's cool my man's got this baby 9 for 500 for me I'm Rey give him 250 now." The difference between the messages is significant: The former implies that Mr. Bryant – an individual who is under arrest and found in possession of a 9mm handgun – may have a "baby 9" for sale. The latter is simply a statement to Mr. Bryant about the sender's activities, for which there are no facts to establish whether such third-party activities are unlawful. And there is certainly nothing in the statement to suggest that Mr. Bryant possessed any handgun.

Detective Dabo read this text message and knowingly and intentionally, or with reckless disregard for the truth, submitted a search warrant affidavit where he claimed to have read a different message. But for that false statement, there are no facts to establish the nexus necessary to find probable cause to search Mr. Bryant's cellphone. As such, the search warrant is void and the fruits of its search must be suppressed.

## Factual Background

According to information contained in discovery, on November 6, 2023, Sgt. Julio was operating a citiwatch camera at N. Eutaw and W. Lexington St., at approximately 12pm.[2] At approximately 12:49pm, Sgt. Julio observed Mr. Bryant sitting on a bench at the bus stop next to an unidentified Black male. According to the probable cause statement, Sgt. Julio observed Mr. Bryant give the unidentified man several strips of suspected suboxone in exchange for U.S. currency. Shortly

---

[2] Exhibit A (Statement of Probable Cause).

thereafter, three other officers – Detective Dabo, Detective Dollard, and Detective Jones – approach Mr. Bryant and arrest him.

During the arrest, an officer asks Mr. Bryant if he had any drugs or weapons on him and he replied "yes," and pointed with his head to his left side. Officers recovered a black 9mm Bryco Arms Jennings handgun loaded with nine rounds of ammunition. Officers continued to search Mr. Bryant and recovered 16 suspected suboxone strips; a clear plastic baggie containing 11 multicolored chalky pills of suspected MDMA; one decorative baggie with suspected cannabis; and U.S. currency. Officers then transported Mr. Bryant to the Central District for questioning.

While in the interrogation room, Mr. Bryant was allowed to use his iPhone to call his girlfriend to tell her that he was arrested and to retrieve phone numbers.[3] According to Detective Dabo, "the cell phone was sitting on the table while Mr. Bryant was going through it[.]"[4] That's true. Video camera footage shows that while Mr. Bryant was using his cellphone, it was sitting on the table between Mr. Bryant and Detective Dabo.

---

[3] Exhibit B (Application in Support of a Search Warrant) at 12; Exhibit C-1 and C-2 (Audio/Video Recording of Central District Interview Room) at $13{:}53{:}25 - 13{:}59{:}57$.
[4] *Id.*





Detective Dabo's affidavit further states that while Mr. Bryant was going through his cellphone, "Your Affiant saw a text message come to the phone that said 'I need to buy a baby 9 for $500.' Based my knowledge training and experience, it is known to Your Affiant that 'baby 9' is a street term for a 9mm handgun."

Bryant was then transported to the Cental District for arrest debriefing. While in the debriefing room, Bryant was allowed to open his blue iPhone with a blue and white case and call his girlfriend to tell her that he was arrested and to get phone numbers out so that he can write them down. The cell phone was sitting on the table while Bryant was going through it and Your Affiant saw a text message come to the phone that said "I need to buy a baby 9 for $500". Based on my knowledge training and experience, it is known to Your Affiant that "baby 9" is a street term for a 9mm handgun.

Based on the information contained in the affidavit, Detective Dabo believed there was probable cause that Mr. Bryant's cell phone "and digital storage therein,

sim card, and removable storage media contains evidence in violation of Maryland Firearms laws, Criminal Law Article, Title 4, Sections 4-101 through 4-407 and Public Safety Article, Title 5, Sections 5-101 through 5-908, Title 5, Sections 5-101 through 5-206 and Drug Trafficking under CR 5-602 of the Annotated Code of Maryland."

The Government provided Mr. Bryant with a Cellebrite cell phone extraction report. Counsel for Mr. Bryant has reviewed the report and has not found any text message that reads "I need to buy a baby 9 for $500."

There is, however, a different text message that says – and implies – something completely different[5]:



---

[5] Exhibit D (Excerpt from Cellebrite Extraction Report).

Detective Dabo saw this text message, but prepared an affidavit where he swore he saw a message that is materially different. That material difference led that magistrate judge to believe that there was probable cause to search Mr. Bryant's cellphone. Because Detective Dabo's search warrant affidavit contains a false statement that is material to the probable cause determination, it is void and the fruits of its search must be suppressed.

## Legal Standard

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Supreme Court has established that a criminal defendant has a right, under certain circumstances, to challenge the veracity of statements made in an affidavit in support of a search warrant. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Under *Franks*, a defendant is entitled to suppression of evidence seized if, during the evidentiary hearing, "perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Id.* at 156.

To obtain a *Fanks* hearing, a defendant must make a substantial preliminary showing that (1) law enforcement made a "false statement"; (2) the false statement was made "knowingly and intentionally, or with reckless disregard for the truth"; and (3) the false statement was "necessary to the finding of probable cause." *United States*

*v. Moody*, 931 F.3d 366, 370 (4th Cir. 2019) (citing *United States v. White*, 850 F.3d 667, 673 (4th Cir. 2017)). If after the hearing, "the allegation of perjury or reckless disregard" is established by a preponderance of the evidence, and, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause," the search warrant must be voided and the fruits of the search excluded. *Franks*, 438 U.S. at 156.

## Argument

### 1. Detective Dabo falsely stated that he saw a text message on Mr. Bryant's cellphone that read "I need to buy a baby 9 for $500."

When Detective Dabo submitted the affidavit in support of the search warrant for Mr. Bryant's cellphone, he stated, unequivocally, that he saw a text message come to the phone that said, "I need to buy a baby 9 for $500." That statement is false. Detective Dabo saw a text message that says – and implies – something completely different:



The existence of a text message with similar words or phrasing may at first glance suggest that Detective Dabo simply offered a summary recitation of a text message he viewed. Or that he saw a message that "in essence" or "in effect" stated "I need to buy a 9 for $500."

But to make that finding would rewrite Detective Dabo's sworn affidavit. His affidavit is clear, specific, and unequivocal about what he claimed to see: He "saw a text message come to the phone that said 'I need to buy a 9 for $500.' " He chose to use quotation marks to identify, with specificity, the exact text message he swore that he viewed.

Additionally, the nature of the text message Detective Dabo reported seeing is materially different than the actual message on Mr. Bryant's cellphone. The former implies that Mr. Bryant – an individual who is under arrest and found in possession of a 9mm handgun – may have a "baby 9" for sale. The latter is simply a statement to Mr. Bryant about the sender's activities, for which there are no facts to establish whether such third-party activities are unlawful. And there is certainly nothing in the statement to suggest that Mr. Bryant possessed any handgun.

Mr. Bryant has made a substantial preliminary showing that Detective Dabo made a false statement in the search warrant affidavit.

## 2. Detective Dabo made the false statement knowingly and intentionally, or with reckless disregard for the truth.

The circumstances surrounding Mr. Bryant's arrest and processing demonstrate that Detective Dabo made this false statement knowingly and intentionally, or at the very least, with reckless disregard for the truth.

***First***, Detective Dabo submitted a sworn affidavit where he claimed he saw a text message that was materially different from the message he actually saw. Detective Dabo was sitting at the same table across from Mr. Bryant at the time he was using his cellphone. He was close enough to the phone that he could reach it with little effort.



And we know he was close enough to read the text message because he tells us so in the sworn affidavit: "The cell phone was sitting on the table while Bryant was going through it and Your Affiant saw a text message come to the phone that said 'I need to buy a baby 9 for $500.'"

But that is not the text message Detective Dabo saw. The actual text message Detective Dabo read said: "Hell yea that's cool my man's got this baby 9 for 500 for me I'm Rey give him 250 now." Detective Dabo knowingly and intentionally submitted an affidavit that distorts not only the language of the text message, but

the nature of it. An incoming text message that reads "I need to buy a baby 9 for $500" suggests the sender is inquiring from the recipient whether they have one for sale. Importantly, Detective Dabo claimed to have seen the text message after Mr. Bryant was arrested and found in possession of a 9mm handgun. As is explained in greater detail below, that text message in this context provides a nexus for a magistrate judge to believe that evidence of a crime may be found on the cell phone. The actual text message Detective Dabo saw does not carry that same implication.

Detective Dabo read a text message and submitted an affidavit claiming the message said something materially different. For that reason, he acted knowingly and intentionally.

**Second**, to the extent the Government argues (or Detective Dabo claims) that he made a mistake, the language Detective Dabo used in his affidavit provides a basis to find that he acted with reckless disregard for the truth. Detective Dabo was not equivocal in his search warrant affidavit. He did not say that he saw a text message that referenced a "baby 9" for sale, or that he saw a message that "in effect" discussed a person interested in buying a "baby 9." He committed to (and swore to a magistrate judge) that he saw a text message that read a very specific way. Indeed, Detective Dabo went as far as including quotation marks in the affidavit to directly quote the text message he claims he saw. Stated differently, Detective Dabo's search warrant led the magistrate judge to believe (and reasonably so) that he actually saw what he claimed to have seen.

If Detective Dabo used such language in his search warrant affidavit knowing that he was not as sure about what he actually saw, then he's demonstrated a reckless disregard for the truth. That is because the quoted language of the text message he claimed to have seen, taken together with the context of Mr. Bryant's arrest, provides a nexus for the magistrate to find probable cause to issue a search warrant for Mr. Bryant's cellphone. In other words, the fact of what that text message said, and the implication that falls from it, are so material to the search warrant that it would be a reckless disregard for the truth if Detective Dabo used such unequivocal language in the search warrant affidavit knowing that he wasn't as sure about what he claimed to have seen.

Mr. Bryant has made a substantial preliminary showing that Detective Dabo made a false statement knowingly and intentionally, or with reckless disregard for the truth.

### 3. Detective Dabo's false statement was necessary to finding of probable cause.

As noted above, to obtain a *Franks* hearing a defendant must make a "substantial preliminary showing" that the false information is "essential to the probable cause determination." *Colkley*, 899 F.2d at 300. The standard is met where a defendant makes a "detailed offer of proof" that, absent the false information, the remaining content of the search warrant would not furnish sufficient probable cause to search the specified locations. *Id*.

"In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but

whether it is reasonable to believe that the items to be seized will be found in the place to be searched." *United States v. Lalor*, 996 F.2d 1578,1585 (4th Cir. 1993). Stated differently, there must be a nexus between the to place to be searched and the items to be seized. For example, in the context of search warrants for residences, federal courts in Fourth Circuit and others have upheld the search "only where some information links the criminal activity to the defendant's residence." *Id.* (collecting cases). The required nexus "may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *Id.* (quoting *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988).

There is a reason Detective Dabo included in the search warrant affidavit the claim about the text message – it provided a necessary link to establish a nexus between Mr. Bryant's arrest and the contents of his cellphone. But for evidence of a text message implying that Mr. Bryant may have a "baby 9" for sale, there are no facts to establish that there is evidence of firearm or drug-related offenses[6] contained within Mr. Bryant's cell phone. The probable cause affidavit makes clear that law enforcement arrested Mr. Bryant because of their observations on CCTV camera. *See*

---

[6] Detective Dabo does not specify, with particularity, the offense(s) for which he believes probable causes exists to search Mr. Bryant' cellphone. The search warrant affidavit simply cites to a wide range of firearms and drug-related Maryland states. See Ex. B ("Maryland Firearms Laws, Criminal Law Article, Title 4, Sections 4-101 through 4-407 and Public Safety Article, Title 5, Section 5-101 through 5-908, Title 5, Sections 5-1001 through 5-206 and Drug Trafficking under CR 5-602 of the Annotated Code of Maryland."). The failure to identify, with particularity, the crime(s) for which probable cause exists to search Mr. Bryant's phone further demonstrates its failure to comply with the Fourth Amendment. *See United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010) ("The particularity requirement is fulfilled when the warrant identifies the items to be seized by their relation to the designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant.")

Ex. B at 12. There is nothing about those reported observations that suggest evidence of a crime will be found on a phone eventually found in Mr. Bryant's possession. In fact, Detective Dabo's affidavit does not report even seeing Mr. Bryant in possession of or using a cellphone at any point prior to his arrest. Thus, when removing Detective Dabo's false statement from the search warrant affidavit, there is no nexus between the crimes for which he was suspected of committing and his cellphone.

By removing Detective Dabo's false statement from the search warrant affidavit, all that is left are blanket generalizations about the use of cellphones by "gun and drug traffickers." *See* Ex. B at 7-8. Numerous federal courts have held that such "blanket generalizations about the widespread use of cellphones are not sufficient to demonstrate probable cause." *United States v. Banyan*, 2025 WL 1922025, at* (S.D. N.Y. July 14, 2025) (citing cases); United States v. Garcia, 2023 WL 4850553, at *7-9 (D. Conn. July 8, 2023); United States v. Santos, 2024 WL 3566983, at *15 (E.D.N.Y. July 29, 2024). If it were sufficient, then Detective Dabo, and any member of the Baltimore Police Department, could simply cut and paste these generalizations into a search warrant affidavit and seek a warrant to search a cellphone anytime anyone arrested for firearms or drug trafficking was found in possession of a cellphone. Such a result would eviscerate Fourth Amendment protections and undermine the Supreme Court's recognition of the significant privacy interests at stake at issue with respect to cell phone searches. *See Riley v. California*, 573 U.S. 373, 396-97 (2014) ("Indeed, a cellphone would typically expose to the government farm more than the most exhaustive search of a house; A phone not only

contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form – unless the phone is.").

Detective Dabo's search warrant provided the magistrate judge with a nexus to suspect evidence of a crime may be found in Mr. Bryant's cellphone. A text message that implied Mr. Bryant may have a "baby 9" for sale. Unfortunately for the magistrate, Detective Dabo's claim about the language and nature of the text message was false. When that false statement is removed from the probable cause equation, there are no case-specific facts to establish a nexus between the offenses Mr. Bryant was suspected of committing and his cellphone. In other words, there is no probable cause to search Mr. Bryant's cellphone. For these reasons, Mr. Bryant has made a substantial preliminary showing to warrant a *Franks* hearing.

## Conclusion

For the reasons stated above, the search warrant for Mr. Bryant's cell phone is void and the fruits of its search must be suppressed. Mr. Bryant is entitled to *Franks* hearing to further develop the record on his motion to suppress.

Respectfully submitted,
James Wyda
Federal Public Defender
  for the District of Maryland


___/s/_____
Francisco A. Carriedo (#816158)
Sasha Garcon (#817494)
Assistant Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland  21201
Phone: (410) 962-3962
Fax:  (410) 962-0872
Email: Francisco_Carriedo@fd.org
        Sasha_Garcon@fd.org


## CERTIFICATE OF SERVICE

     I hereby certify that on August 15, 2025, a copy of the foregoing was served via CM/ECF to the Government.

_____/s/_____
Francisco A. Carriedo